IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THAXTER WHITAKER,

        Petitioner,

v.                                                Civil Action No. 3:08cv662

PATRICIA R. STANSBERRY,

        Respondent.

## MEMORANDUM OPINION

Petitioner, a federal inmate proceeding *pro se*, submitted this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] (Docket No. 1.) Whitaker contends: (1) that he is entitled to habeas relief in the form of a one-year reduction of his prison term upon completion of a Residential Drug Abuse Treatment Program ("RDAP")[2] because the Bureau of Prisons ("BOP") regulations excluding him from eligibility for early release violate the Administrative Procedure

---

[1] 28 U.S.C. § 2241 provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a).

[2] The program and early release incentives are set out in 18 U.S.C. § 3621(e):

(2)    Incentive for prisoners' successful completion of treatment program.--

(A)    (A) Generally.--Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment . . . shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate . . . .

(B)    Period of custody.--The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

Act ("APA");[3] and, (2) that the decision of the Ninth Circuit in *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008), precludes the BOP from re-litigating the same issue in the instant case. (Pet. 1, 2.)[4]

On December 29, 2008, Respondent Stansberry filed a response to the petition. (Docket No. 4.) On January 9, 2009, Whitaker filed his Traverse to the Respondants [sic] Answer. (Docket No. 5.) On April 16, 2009, Whitaker filed a Motion for the Court to Take Judicial Notice of a Violation of the Clean Hands Doctrine.[5] (Docket No. 8.) On April 22, 2009, Stansberry submitted a response to this motion. (Docket No. 9.) The matter is ripe for disposition.

## I. Factual and Procedural Background

The United States District Court for the Eastern District of Wisconsin convicted Petitioner of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922 and 924, and sentenced him to 42 months of incarceration. (Respt.'s. Mot. Dismiss, Ex. A (Decl. of Lynnell Cox ("Cox Decl.") ¶ 3).) On November 12, 2008, Whitaker entered the BOP's RDAP. (Cox Decl. ¶ 5.) Federal law authorizes the BOP to reduce by up to one year the sentence of any

---

[3] 5 U.S.C. § 500 *et seq.*

[4] Whitaker did not number the pages on his petition. The Court designates the unnumbered pages 1 through 3 and cites them accordingly.

[5] Whitaker presents no evidence that Stansberry has acted in bad faith. This motion, which states that it is in response to "defendants [sic] recent filings" (though no pleading had been filed between Whitaker's Traverse and Petitioner's clean hands doctrine motion), merely re-alleges Whitaker's claim that Stansberry has previously lost this argument and should now be precluded from applying the BOP regulation to Whitaker. (Petr.'s Mot. Violation Clean Hands Doctrine 2-4.) This motion is similarly unnumbered, so the Court designates the pages 1 through 4 and cites them accordingly.

RDAP graduate who was not convicted of a violent offense. The BOP, however, has promulgated a regulation rendering inmates convicted of offenses involving the use or possession of a firearm categorically ineligible for early release under this program. Accordingly, the BOP found Whitaker ineligible for early release due to his conviction for being a felon in possession of a firearm. (Cox Decl. ¶ 4.) Whitaker's expected RDAP completion date fell on July 1, 2009. (Pet. 3.) Whitaker's projected date of completion of his term of incarceration falls on June 16, 2010 with the application of good conduct time, but without the benefit of a one-year sentence reduction. (Cox Decl. ¶ 5.)

On October 4, 2008, Whitaker filed the instant federal petition. Stansberry answers that Whitaker's claim is both procedurally barred and without merit. (Resp. 3.)

The Court finds that no procedural bar exists to Whitaker's claim because 28 U.S.C. § 2241 permits a challenge to the length or conditions of confinement. The Court determines, however, that Whitaker's claim lacks merit because the BOP has articulated a valid rationale for its categorical exclusion in conjunction with a new rule that applies to Whitaker. Therefore, for the reasons that follow, the Court will DISMISS the petition.

## II. Analysis

### A. There Exists No Procedural Bar to Petitioner's Claim

#### 1. § 2241 Affords Relief

Petitions filed under 28 U.S.C. § 2241 attack the manner in which a sentence is executed. *See* 28 U.S.C. § 2241. Although the traditional function of the writ of habeas corpus is to secure release from illegal confinement, a petitioner may also file a § 2241 petition to challenge the length of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 484-88 (1973). Indeed, "if the

'core' of the prisoner's claim is the length or duration of his sentence," a habeas petition is appropriate. *Todd v. Baskerville*, 712 F.2d 70, 73 (4th Cir.1983) (noting that when a prisoner claims constitutional due process violations unrelated to the length of his sentence, or makes a claim for damages relating strictly to the conditions of his confinement, the suit may be maintained as a § 1983 action; but where the prisoner challenges the length or duration of his sentence, the proceeding is in habeas).

In the instant matter, Whitaker challenges a matter that could affect the length of his sentence. Whitaker argues that he "is eligible for a reduction of a year off of his sentence after completing the B.O.P. intensive Residential Drug Program." (Pet. 2.) Thus, because Whitaker seeks a reduction of the length of his confinement, a habeas petition affords appropriate relief.

2. **Ripeness**

Stansberry argues that Whitaker's claim is not ripe because he has not yet completed the program. (Resp. 4.) Article III of the Constitution requires that courts hear only "cases" or "controversies." *See* U.S. Const. art. III, § 2, cl.1. The ripeness doctrine stems from this requirement. *See Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003). A cause of action is ripe for adjudication where "the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). Courts' adherence to the ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also [] protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).

The Court lacks sufficient information to determine the ripeness of Whitaker's claim. Whitaker states that his expected RDAP completion date fell on July 1, 2009. (Pet. 3.) Respondent does not dispute the completion date. Neither party supplemented the record to reflect whether Whitaker did or did not complete RDAP in July of 2009.

Because the Court cannot determine whether Whitaker's claim is ripe for disposition without confirmation of his completion of RDAP, and because the parties have had time to supplement the record if they desired, the Court will review Whitaker's petition on the merits in the interest of justice.

### B. *Arrington* Does Not Control the Instant Issue

Although Whitaker argues that "the B.O.P. is required to follow the precedence [sic] of the 9th circuit" (Petr.'s Traverse 3),[6] the Ninth Circuit's decision in *Arrington* does not control the issue at bar. First, Whitaker was neither sentenced nor incarcerated in a district within the Ninth Circuit. (Cox Decl. ¶¶ 3, 6.); *see Pullie v. Stansberry*, No. 2:08cv442, 2009 WL 2176120, at *4 (E.D. Va. July 15, 2009). "[A] federal court of appeals's decision is only binding within its circuit." *Va. Soc'y Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 393-94 (4th Cir. 2001) (finding an FEC regulation unconstitutional, but refusing to grant a nationwide injunction because that would "in effect [] impos[e] our view of the law on all the other circuits"). To hold to the contrary "would 'substantially thwart the development of important questions of law' . . . [and] deprive the Supreme Court of the benefit of decisions from several courts of appeals." *Id.*

---

[6] Whitaker did not number the pages in his filing titled "Plaintiff's Traverse to Respondants Answer." The Court designates the pages 1 through 3 and cites them accordingly.

(*citing United States v. Mendoza*, 464 U.S. 154, 160 (1984)). Thus, *Arrington* does not bind this Court.

Second, contrary to Whitaker's allegation that "the B.O.P. conceeded [sic] that the B.O.P. regulaitons [sic] violate the A.P.A.," and therefore, res judicata bars the BOP from re-litigating this issue, neither the doctrine of res judicata nor the doctrine of collateral estoppel bars the BOP from litigating the instant issue.[7] (Pet. 1-2); (Petr.'s Mot. Violation Clean Hands Doctrine 2 ("[T]he Bureau of Prisons has faced the exact same scenario twice in the past . . . .").)[8]

Whitaker misunderstands the applicable law. Res judicata bars "further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). Whitaker was not a party to *Arrington v. Daniels*. Collateral estoppel provides that a court's previous decision on an issue of fact or law "is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *Mendoza*, 464 U.S. at 158; *Va. Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1311 (4th Cir. 1987). However, although the doctrine of collateral estoppel may be asserted by a non-party, *see Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979), where the government is a party to the prior litigation, nonmutual offensive collateral estoppel does not apply because of the geographic breadth of the

---

[7] Courts construe *pro se* petitions liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers). Although Whitaker argues only res judicata, the Court also considers the application of the doctrine of collateral estoppel to Whitaker's claim.

[8] As with Whitaker's previous filings, his Motion for the Court to Take Judicial Notice of a Violation of the Clean Hands Doctrine is unnumbered. The Court designates the unnumbered pages 1 through 4 and cites them accordingly.

government's litigation and the nature of the issues litigated.[9] *Mendoza*, 464 U.S. at 159-62. This principle applies equally to the head of a government agency. *Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 323 (5th Cir. 1984) (foreclosing the use of nonmutual collateral estoppel against the Secretary of Health and Human Services). Thus, Petitioner may not use the doctrine of collateral estoppel against Respondent in this habeas action.

### C. Merits of Petitioner's Claim

Although it meets no procedural bar, Whitaker's petition nevertheless fails because the BOP stated a valid rationale for its categorical exclusion of persons convicted of firearms charges from early release eligibility in conjunction with a new rule applicable to Petitioner.

In *Arrington v. Daniels*, the Ninth Circuit concluded that the BOP failed to explain adequately the purpose for issuing its new rule categorically excluding persons convicted of firearms charges from eligibility for early release, rendering the rule arbitrary and capricious under the APA. *Arrington*, 516 F.3d at 1116. Since the Ninth Circuit's decision, however, the BOP has promulgated a substantively identical rule that denies early release to inmates with a current felony conviction for "[a]n offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device)." 28 C.F.R. § 550.55(b)(5)(ii) (2009). The new rule was issued in conjunction with the following statement of purpose:

> There is a significant potential for violence from criminals who carry, possess or use firearms. As the Supreme Court noted in *Lopez v. Davis*, "denial of early release to all

---

[9] "Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party." *Mendoza*, 464 U.S. at 159 n.4 (*citing Parklane Hosiery*, 439 U.S. at 326 n.4).

7

> inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life." [531 U.S. 230, 240 (2001)]. The Bureau adopts this reasoning. The Bureau recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences.
> .... [T]he specified elements of these offenses pose a significant threat of dangerousness or violent behavior to the public. This threat presents a potential safety risk to the public if inmates who have demonstrated such behavior are released to the community prematurely. Also, early release would undermine the seriousness of these offenses as reflected by the length of the sentence which the court deemed appropriate to impose.

74 Fed. Reg. 1892-01, 1895 (Jan. 14, 2009). Thus, the BOP clearly invokes public safety as the rationale for issuing the new rule. Because this rule applies to Whitaker, his claim lacks merit.

A brief discussion of general administrative law principles provides context for understanding the relevant decisions.

### 1. Reviewing an Agency's Interpretation of its Statutory Grant of Power

Administrative agencies such as the BOP exist because "in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). Agencies act within a statutory scheme that "'clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority'" pursuant to an "'intelligible principle to which the [agency] is directed to conform.'" *Id.* at 372-73 (*quoting Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946); *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). Although agencies may not exceed their statutory grant of power, execution of an agency's responsibility inescapably "requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231 (1974).

When evaluating such an agency-created policy, courts initially should determine whether Congress granted to the agency the necessary discretion. Courts must first examine the statute to decide "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). If Congress has left the matter to the agency's discretion by enacting a statute that "is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843; *see also Md. Dep't of Health & Mental Hygiene v. Ctrs. for Medicare & Medicaid Servs.*, 542 F.3d 424, 433 (4th Cir. 2008) (inquiring initially as to whether agency's interpretation of a statute "exceed[ed] its regulatory authority or is otherwise impermissible") (*citing W. Va. v. Thompson*, 475 F.3d 204, 209 (4th Cir. 2007)). The agency's interpretation is entitled to deference if it "fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design." *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995) (*citing Chevron*, 467 U.S. at 844).

2. **Reviewing the Manner in which an Agency Exercises Power Granted by Statute**

An agency with discretion to issue a particular regulation may nevertheless violate the APA because of the manner in which it was promulgated. 5 U.S.C. § 500 *et seq.* The APA requires courts to set aside rules that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[10] This "'narrow' standard of

---

[10] Courts have contemplated whether the BOP's enactment of this regulation is subject to judicial review under the APA. Section 706 of the APA, and its grant of judicial review, does

9

review [requires] that an agency 'examine the relevant data and articulate a satisfactory explanation for its action.'" *FCC v. Fox Television Stations, Inc.*, 509 U.S. ----, 129 S. Ct. 1800, 1810 (2009) (*quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). An explanation is satisfactory when it shows a "'rational connection between the facts found and the choice made'" after consideration of all important aspects of the problem pursuant to criteria permitted by statute. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (*quoting Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *see also Md. Dep't of Health & Mental Hygiene*, 542 F.3d at 428 (setting forth factors relevant to arbitrary and capricious analysis) (*quoting Thompson*, 475 F.3d at 209). If the agency has exercised its reasoned judgment, a reviewing "'court is not to substitute its judgment for that of the agency.'" *Fox Television Stations, Inc.*, 129 S. Ct. at 1810 (*quoting Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

Although courts defer to well-reasoned decisions by agencies, courts "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs.*

---

not apply to "any determination, decision, or order" made under the RDAP statute. 18 U.S.C. § 3625. The Court agrees with, and Respondent does not contest, the majority position that "the BOP's categorical exclusion by rule of a class of prisoners is not the kind of retrospective particularized fact-finding for each prisoner that would render such an exclusion an adjudication, and thereby preclude . . . judicial review." *Minotti v. Whitehead*, 584 F. Supp. 2d 750, 761-62 (D. Md. 2008) (*citing* 5 U.S.C. § 551(4) (defining "rule" as "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law"); 5 U.S.C. § 551(6)-(7) (defining "adjudication" as an "agency process for the formulation" of a "final disposition . . . of an agency in a matter other than rule making"); *Pullie v. Stansberry*, No. 2:08cv442, 2009 WL 2176120, at *3 (E.D. Va. July 15, 2009); *see also Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998) (concluding that "§ 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions"); *but see Riopelle v. Eichenlaub*, No. 2:08cv11754, 2008 WL 2949236, at *2 (E.D. Mich. July 29, 2008) (holding that the rule at issue is not subject to arbitrary and capricious review under the APA).

*Ass'n*, 463 U.S. at 43 (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *see also Eggers v. Clinchfield Coal Co.*, 29 F. App'x 144, 150 n.6 (4th Cir. 2002) (No. 01-1198), *available at* 2002 WL 214502, at *5 (explaining that courts may not affirm agency action "based on a rationale which the court could posit as '[t]he only way to make sense of' an agency's action" (alteration in original) (*quoting Md. People's Counsel v. F.E.R.C.*, 761 F.2d 768, 775 (D.C. Cir. 1985) (Scalia, Circuit Judge)). Courts may, however, "'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Fox Television Stations, Inc.*, 129 S. Ct. at 1810 (*quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). Moreover, courts should uphold regulations for which "'the necessary articulation of basis for administrative action [can] be discerned by reference to clearly relevant sources other than a formal statement of reasons.'" *Amoco Oil Co. v. EPA*, 501 F.2d 722, 742 n.53 (D.C. Cir. 1974) (*quoting Envtl. Def. Fund, Inc. v. EPA*, 465 F.2d 528, 537 (1972)); *see also Gatewood v. Outlaw*, 560 F.3d 843, 847 (8th Cir. 2009) (explaining, when upholding BOP's categorical exclusion rule, that "rulemaking decisions, which are prospective and legislative in nature, need not be made on a confined administrative record"), *pet. for cert. filed*, No. 09-5089 (June 23, 2009). Indeed, "'on occasion, regulations with no statement of purpose have been upheld where the agency's purpose was considered obvious and unmistakable.'" *Citizens to Save Spencer County v. EPA*, 600 F.2d 844, 884 (D.C. Cir. 1979) (*quoting Tabor v. Joint Bd. for Enrollment of Actuaries*, 566 F.2d 705, 710 (D.C. Cir. 1977)).

### 3. The BOP's Rationale for the Categorical Exclusion Rule

Petitioner does not present a novel claim. For support he relies on the reasoning in the Ninth Circuit's decision in *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008). No court

11

outside of the Ninth Circuit has adopted the holding in *Arrington*. Some courts have interpreted the Supreme Court's ruling in *Lopez* to preclude an APA challenge to 28 C.F.R. § 550.58(a)(1)(vi)(B) on the grounds of arbitrariness.[11] Others, including a court in this District, have found that the BOP sufficiently expressed the public safety rationale in the record to explain and issue the rule pursuant to the APA.[12] Another court has upheld the regulation solely on the strength of the uniformity rationale. *See Minotti*, 584 F. Supp. 2d at 765.

More recently, courts have held that the BOP may apply the new rule codified at 28 C.F.R. § 550.55(b)(5)(ii), including its explicitly stated public safety rationale, to convictions occurring prior to its effective date without violating retroactivity principles. *Hicks v. Fed. Bureau of Prisons*, 603 F. Supp. 2d 835 (D.S.C. 2009); *Pullie*, 2009 WL 2176120, at *5-6; *Crist v. Bledsoe*, No. 1:09cv00512, 2009 WL 1139832, at *4 (M.D. Pa. Apr. 28, 2009). If the BOP may apply the new rule to Petitioner despite Whitaker's conviction prior to the new rule's effective date, Whitaker cannot prevail.[13]

---

[11] *See, e.g., Harrison v. Lamanna*, 19 F. App'x 342 (6th Cir. 2001) (No. 01-3050), *available at* 2001 WL 1136080, at *1; *but see Alnoubani v. Fed. Bureau of Prisons*, 306 F. App'x 309, 312 (7th Cir. 2009) (No. 08-1685), *available at* 2009 WL 102126, at *2 (holding that district court erred in finding that *Lopez* decided question of arbitrariness and remanding for further proceedings).

[12] *See, e.g., Gatewood*, 560 F.3d at 847; *Pullie v. Stansberry*, No. 2:08cv442, 2009 WL 2176120, at *5 (July 15, 2009); *Muolo v. Quintana*, 593 F. Supp. 2d 776, 786 (W.D. Pa. 2009) (concluding that the explanation was "evident from review of the litigation to which the Bureau referred in the Federal Register" over the original policy statement, which provided that the "'possession of a dangerous weapon during commission of a drug offense poses a substantial risk that force may be used against persons or property'" (*quoting* BOP Policy Statement 5162.02, § 9)).

[13] Indeed, even the *Arrington* Court reiterated that it saw "'nothing unreasonable in the Bureau's making the common-sense decision that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in their felonious employment,

4. <u>Retroactivity</u>

Application of the new rule to Petitioner does not result in an impermissible retroactive effect. "The general rule in the statutory context is that '[a]bsent an express directive from Congress, [a court] must apply a newly enacted statute to pending cases unless doing so would give the statute retroactive effect.'" *Hicks*, 603 F. Supp. 2d at 841 (alterations in original) (quotation marks omitted) (*quoting Alexander v. Boyd*, 113 F.3d 1373, 1387 (4th Cir. 1997)) "The same logic applies in the regulatory context." *Id.* A "retroactive effect" is one that would "'would impair rights [Petitioner] possessed when he acted, increase [Petitioner's] liability for past conduct, or impose new duties with respect to transactions already completed.'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (*quoting Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)); *see also Landgraf*, 511 U.S. at 277 (explaining "'the principle that a court is to apply the law in effect at the time it renders its decision'" unless the legislature has directed otherwise, or injustice or retroactive effect results (*quoting Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974))).

Both the new rule and its predecessor categorically deny early release eligibility to offenders who, like Whitaker, were convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g). Applying the new rule to Whitaker does not result in an impermissible retroactive effect because the new rule does not impair any rights previously held by Whitaker, does not increase Whitaker's liabilty for past conduct, and does not impose new duties in any

---

even if they have wound up committing a nonviolent offense.'" 516 F.3d at 1115 (*quoting Bowen v. Hood*, 202 F.3d 1211, 1219 (9th Cir. 2000)). The Ninth Circuit merely found that the BOP had only articulated this rule during litigation and not in the record, rendering it a "'*post hoc* rationalization[]' . . . that we are forbidden to consider in conducting review under the APA." *Id.* at 1113 (*quoting Burlington Truck Lines, Inc.*, 371 U.S. at 168) (alteration in original).

completed transactions on Whitaker. *See Hicks,* 603 F. Supp. 2d at 841-42 (concluding that the "'new rule constitutes a clarification - rather than a substantive change - of the law as it existed beforehand, [such that the rule may be applied] to pre-promulgation conduct'") (*quoting Levy v. Sterling Holding Co., LLC*, 554 F.3d 493, 506 (3d Cir. 2008)). The BOP's decision to deny early release to Whitaker may be evaluated pursuant to the more fulsome explanation given for the rule promulgated after his denial, and that explanation satisfies APA requirements. *Id.* at 842; *Pullie*, 2009 WL 2176120, at *6.

Because the BOP may apply the new rule found at 28 C.F.R. § 550.55(b)(5)(ii), Whitaker's claim lacks merit. The petition will be DISMISSED.

### III. Conclusion

For the foregoing reasons, the Court shall DISMISS the Petition. Accordingly, the Petition will be DISMISSED.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: November 9, 2009

14